**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Sheryl Garbus, individually on behalf of herself and all others similarly situated, | x : : |
| Plaintiffs, | : Case No. : |
| v. | : : |
| UV Sanitizer USA LLC, | : **CLASS ACTION** : **COMPLAINT** |
| Defendant. | : **JURY TRIAL DEMANDED** : : |
| | x |

Plaintiff, Sheryl Garbus (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.     This action seeks to remedy the deceptive and misleading business practices of UV Sanitizer USA LLC (hereinafter "Defendant") with respect to the marketing and sales of the Portable UV Light Sanitizer (hereinafter the "Product") throughout the State of New York and throughout the country.

2.      Defendant manufactures, sells and distributes the Portable UV Light Sanitizing wand through its website (www.uvsanitizerusa.com) where it prominently represents that it can "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds.  However, Defendant's advertising and marketing campaign is false, deceptive, and

1

misleading because the Product does not eliminate any harmful bacteria and viruses, nor does it kill 99.99% of viruses, bacteria, germs and molds. Despite the fact that the FDA has stated that UV sanitizers must be supplemented with manual cleaning in order to be effective, Defendant represents that its Product can take the place of sanitizing wipes and disinfecting chemicals.

3.      In addition, the scientific community recognizes that consumers' use of and exposure to UV radiation puts them at risk for DNA damage and carcinogenesis.  Despite these risks, Defendant markets and advertises the Product as "completely safe to use" and "100% safe" without providing adequate safety warnings or adequate protective features.

4.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Product can "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds and is completely and "100% safe."  Plaintiff and Class Members paid a premium for the Product based upon these representations and omissions. Had Plaintiff and the Class Members known that the Product cannot eliminate any harmful bacteria and viruses; kill 99.99% of viruses, bacteria, germs and molds; or that the Product subjects users to harmful levels of UV radiation, they would not have purchased the Product at all.  Given that Plaintiff and Class Members purchased and paid a premium for the Product based on Defendant's misrepresentations and omissions, Plaintiff and Class Members suffered an injury in the amount of the purchase price of the Product and/or the premium paid.

5.      Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, express warranties, and the Magnuson-Moss Warranty Act, and unjust enrichment.  Defendant breached and continues to breach its express warranties regarding the Product.  Defendant has been and continues to be unjustly enriched.  Accordingly,

2

Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

6.      The global ultraviolet (UV) disinfection equipment market was valued at $2.3 Billion USD in 2019, and that value is projected to have a near 20% compound annual growth rate.[1]   Currently there is a global outbreak of a novel coronavirus causing respiratory disease. The disease SARS-CoV-2 is caused by the virus named "Coronavirus Disease 2019" (COVID-19). [2]  Consequently, consumers have grown exponentially more health conscious resulting in the manufacturing, distribution and sales of disinfecting equipment to grow faster than industry projections. This makes the disinfecting equipment business a booming business.  In 2016, the generated revenue in the UV disinfection equipment market was $1.62 Billion USD and is projected to be $6.73 Billion USD in 2025.[3]   These projections likely underestimate the growth of the UV disinfection industry given the outbreak of COVID-19.

### I.      Defendant's Deceptive Claims About the Effectiveness of the Product

7.      As consumers grow more health conscious, they have become increasingly concerned about the claims in UV light disinfecting products.  Companies such as Defendant have capitalized on consumers' desires for products that kill viruses, bacteria, and germs.

---

[1] https://www.grandviewresearch.com/industry-analysis/ultraviolet-uv-disinfection-equipment-market

[2] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7286265/

[3] https://www.prnewswire.com/news-releases/uv-disinfection-equipment-market-to-attain-valuation-of-us6-73-bn-by-2025--due-to-increased-environmental-concerns---tmr-300798713.html

Indeed, consumers are willing to pay, and have paid, a premium for disinfecting products that claim to kill a greater percentage of viruses, bacteria, and germs.   Reasonable consumers, including Plaintiff and Class Members, value products that make such claims based on the belief that they are safer and healthier than alternative products that are not represented as having the same capabilities.

8.      Defendant markets the Product as being able to "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds.  Examples of the Product's advertising are depicted below:



**Our UV Light Sanitizer ™ is Laboratory Tested to Eliminate Up to 99.99% Viruses, Germs, and Bacteria**

- Kills **99.99%** of bacteria, germs, viruses using ultraviolet light.
- **Reduces you and your loved ones** chances of getting sick.
- **Small and Portable.** Bring it wherever you go.
- Join the **1,000,000 members** who also use our UV Light Sanitizer.
- Save **cleaning wipes** and disinfecting chemicals.

# Eliminate Any Harmful Bacteria and Virus !



— **Is UV Light Sanitizer ™  Safe?**

UV Light devices are widely used in hospitals and are 100% safe.

Rest assured that our UV Light Sanitizer Wands are completely safe to use: they have the approval of the SGS and they have been thoroughly lab-tested. They have been developed and produced in an FDA approved facility to ensure your well-being is taken care of.

9.     The packaging and labeling of the Product itself, which is seen by all consumers who Purchase it, repeats the representation that the Product "kills 99.9% of viruses, bacteria, germs and molds":



10.     Despite these representations, the Product does not eliminate any harmful bacteria and viruses, nor does it kill 99.99% of viruses, bacteria, germs and molds.

11.     Whether Defendant's labeling of the Product as "eliminat[ing] any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds is deceptive is judged by whether it would deceive or mislead a reasonable person.

12.     The United States  Federal Drug Administration ("FDA") has issued Guidance for consumers that may be interested in purchasing UVC (Ultraviolet-C) products, like Defendant's Product, to disinfect surfaces at home or similar spaces.[4]  According to the FDA, there are limitations to how effective UVC radiation can be at killing viruses.  Importantly, per the FDA, UVC radiation can only inactivate a virus if the virus is directly exposed to the radiation. Therefore, the inactivation of viruses on surfaces may not be effective due to blocking of the UV radiation by soil, such as dust, or other contaminants such as bodily fluids.[5]  As a result, the FDA has made it clear that UV disinfecting devices are intended to augment disinfection of surfaces *after manual cleaning has been performed* [6]  and has recommended that in order to ensure the safe and effective cleaning of certain medical devices and accessories consumers and health care providers regularly clean those devices with soap and water.[7]

13.     Despite this clear directive from the FDA and the lack of scientific support for the effectiveness of UVC without supplemental manual cleaning, Defendant markets the Product

---

[4] https://www.fda.gov/medical-devices/coronavirus-covid-19-and-medical-devices/uv-lights-and-lamps-ultraviolet-c-radiation-disinfection-and-coronavirus
[5] *Id*.
[6] https://www.fda.gov/media/136533/download
[7] https://www.fda.gov/news-events/press-announcements/fda-reminds-patients-devices-claiming-clean-disinfect-or-sanitize-cpap-machines-using-ozone-gas-or

with the deceptive claim that it "eliminates any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds and does not instruct consumers to manually clean surfaces prior to using the Product.  In fact, Defendant's website explicitly states that using the Product will "Save cleaning wipes and disinfecting chemicals," implying, contrary to FDA recommendations, that manual cleaning is unnecessary.

**II.       Defendant's Deceptive Safety Claims and Omissions**

14.     Defendant represents on its website that the Product is "100% Safe" and "completely safe."[8]

15.     These representations are deceptive and misleading because the Product exposes consumers to potentially harmful UV radiation which puts them at risk for DNA damage and carcinogenesis.

16.     UV radiation is classified by 3 wavelengths, UVA, UVB and UVC. UVC has the shortest wavelength of the 3, therefore the highest energy. Defendant's Product uses a UVC (ultraviolet C) light that is rated at 253.7nm wavelength. Studies show that UV radiations emitted by germicidal lamps with peak emissions in this range represent a human health hazard, causing skin cancer, and cataracts.[9]

17.     Safety science experts at Underwriters Laboratories (UL), a global safety certification company, published a report in 2020 that states the lack of protection in UVC radiation emitting devices sold to households and that there is a lack of proper containment

---

[8] https://uvsanitizerusa.com/pages/uv-sanitizer-usa
[9] Mitchell DL, Nairn RS. The (6-4) photoproduct and human skin cancer. Photo-dermatol. 1988;5(2):61–4.  Pfeifer GP, Besaratinia A. UV wavelength-dependent DNA damage and human non-melanoma and melanoma skin cancer. Photochem Photobiol Sci. 2012;11(1):90–7.

within the devices from UVC emissions.[10]

18.     Organizations including UL, NEMA (National Electrical Manufacturers Association), and the American Lighting Association have deduced that it is not sensible in the consumer setting to rely on behavioral safeguards of consumers alone to mitigate risk of injury from UVC devices.

19.     Reasonable consumers would not consider a product which emits radiation at a level that has been shown to cause skin cancer, cataracts, and other health hazards to be "completely safe" or "100% safe."  Defendant's website and the Product packaging do not disclose these risks and do not contain adequate warnings or instructions for use of the Product to protect and ensure the safety of consumers.

## III.     Defendant's Representations and Omissions Have Caused Injury to Class Members

20.     Consumers rely on label representations and information in making purchasing decisions.

21.     The marketing that the Product will "eliminate any harmful bacteria and virus" and kill 99.99% of viruses, bacteria, germs and molds and that the Product is "100% safe" and "completely safe" in a prominent location throughout the Class Period evidences Defendant's awareness that those claims are material to consumers.

22.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act

---

[10] https://collateral-library-production.s3.amazonaws.com/uploads/asset_file/attachment/26057/CT_26219573_UVC-Germicidal-Devices-flyer_digital_FINAL_073020.pdf

upon such information in making purchasing decisions.

23.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product can effectively kill any harmful bacteria and virus bacteria, germs and molds, and whether a product is safe, especially at the point of sale.  Consumers would not know the true capability and safety of the Product merely by reading the product claims.

24.     Discovering that the Product is unsafe and cannot effectively kill any harmful bacteria and virus nor kill 99.99% of viruses, bacteria, germs and molds requires scientific investigation and knowledge of infectious diseases beyond that of the average consumer.

25.     The reasonable consumer is not expected or required to research the scientific claims of the Product in order to confirm or debunk Defendant's prominent, representations, and warranties that the Product will kill 99.99% of viruses, bacteria, germs and molds.

26.     The reasonable consumer is not expected or required to research the UVC light specifications and it's carcinogenic wavelength dangers of the Product in order to confirm or debunk Defendant's claims, representations, and warranties that the Product is "completely safe to use" and "are 100% safe."

27.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

28.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

29.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a

Product labeled as "eliminat[ing] any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds and being "safe" over comparable products not so advertised.

30.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

     a.   Paid a sum of money for a Product that was not what Defendant represented;

     b.   Paid a premium price for a Product that was not what Defendant represented;

     c.   Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant warranted; and

     d.   Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendant represented.

31.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Product they purchased.

32.     Plaintiff and the Class Members paid for a Product that would "eliminate any harmful bacteria and virus"  and  kills 99.99% of viruses, bacteria, germs and molds and was "safe" but received a Product that was unsafe and does not effectively kill all viruses and bacteria.  The Product Plaintiff and the Class Members received was worth less than the Product for which they paid.

33.     Plaintiff and the Class Members all paid money for the Product. However, Plaintiff and the Class Members did not obtain the full value of the advertised Product due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased,

purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

34.    Consequently, Plaintiff and Class Members were damaged in the amount of the price they overpaid for the Product, in an amount to be proven at trial.

## JURISDICTION AND VENUE

35.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (1) this is a class action involving more than 100 Class Members; (2) there is minimal diversity; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

36.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

37.    Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to Plaintiff and the Class members' claims occurred in this District.

## PARTIES

### Plaintiff

38.    Plaintiff is an individual consumer who, at all times material hereto, was a citizen of the State of New York and resided in this District.  Plaintiff Purchased the Product During the Class Period.  The labeling and advertising for the Product Plaintiff purchased contained the representations that it will "eliminate any harmful bacteria and virus" and kills 99.99% of

12

viruses, bacteria, germs and molds and that the Product is "100% safe" and "completely safe."

39.     Plaintiff believes that products that are advertised to "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds fulfill their claims and that products advertised as "100% safe" and "completely safe" will not expose her to carcinogenic radiation.

40.     Had Defendant not made its false, misleading, and deceptive representations and omissions, Plaintiff would not have been willing to pay the same amount for the Product, and, consequently, would not have been willing to purchase the Product.  Plaintiff purchased, purchased more of, and/or paid more for the Product than she would have had she known the truth about the Product. Since the Product Plaintiff received was worth less than the Product for which she paid, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.  If the Product was actually safe and did "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds, as represented on the Product's advertising and labeling, Plaintiff would purchase the Product in the immediate future.

**Defendant**

41.     Defendant UV Sanitizer USA is a corporation with its principal place of business in Irvine, California.  Defendant manufactures, markets, advertises and distributes the Product in New York and throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Product.

## CLASS ALLEGATIONS

42.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling

13

practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this action is uniquely situated for class-wide resolution, including injunctive relief.

43. The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period (the "Class").

44. Plaintiff also seeks certification, to the extent necessary or appropriate, of a Subclass of individuals who purchased the Product in the State of New York at any time during the Class Period (the "New York Subclass").

45. The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

46. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

47. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

48. <u>Commonality</u>: The questions of law and fact common to the Class Members include, but are not limited to:

      a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

      b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Product;

    c.   Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the ability of its Product to "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds and the safety of its Product;

    d.   Whether Defendant's false and misleading statements and omissions concerning the ability of its Product to "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds and the safety of its Product were likely to deceive the public;

    e.   Whether Defendant failed to comply with its warranties;

    f.   Whether Defendant was unjustly enriched;

    g.   Whether Plaintiff and the Class are entitled to injunctive relief;

    h.   Whether Defendant was unjustly enriched;

    i.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

49.   <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Product.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

50.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all members of the Class, and she has a strong interest in vindicating her rights; and she has retained counsel competent and experienced in complex class action litigation

15

and they intend to vigorously prosecute this action.

51.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices and whether the Product is sold as advertised.

52.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this

action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all consumers who were induced by Defendant's uniform false advertising to purchase its Product as being safe, "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds.

53.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## **INJUNCTIVE CLASS RELIEF**

54.    Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about efficacy and safety of its Product.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Product again if the components and/or

design were changed so that it could indeed "eliminate any harmful bacteria and virus" and kills

99.99% of viruses, bacteria, germs and molds, and was "100% safe" and "completely safe."

55.     The injunctive Class is properly brought and should be maintained as a class

action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality,

typicality, and adequacy because:

a.   <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly

impracticable.  Defendant's Product has been purchased by thousands of people

throughout the United States;

b.   <u>Commonality</u>: Questions of law and fact are common to members of the Class.

Defendant's misconduct was uniformly directed at all consumers.  Thus, all

members of the Class have a common cause against Defendant to stop its

misleading conduct through an injunction.  Since the issues presented by this

injunctive Class deal exclusively with Defendant's misconduct, resolution of these

questions would necessarily be common to the entire Class.  Moreover, there are

common questions of law and fact inherent in the resolution of the proposed

injunctive class, including, *inter alia*:

i.   Whether members of the Class will continue to suffer harm by virtue of

Defendant's deceptive product marketing and labeling;

ii.   Whether, on equitable grounds, Defendant should be prevented from

continuing to deceptively mislabel its Product as being able to

"eliminate any harmful bacteria and virus" and kills 99.99% of viruses,

bacteria, germs and molds, and being "100% safe" and "completely

18

safe."

      iii.   Whether Defendant should be enjoined from selling the Product.

c.  <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices).  Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendant's Product which was sold unfairly and deceptively to consumers throughout the United States.

d.  <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights.  In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

56.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Product using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to

honestly disclose to consumers the nature of the contents of its Product. Plaintiff would purchase

the Product again if the components and/or design were changed so that it would indeed

"eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and

molds and was "100% safe" and "completely safe."

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and New York Subclass Members)

57.     Plaintiff repeats and realleges each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

58.     New York General Business Law Section 349 ("GBL § 349") declares unlawful

"[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the

furnishing of any service in this state."

59.     The conduct of Defendant alleged herein constitutes recurring, "unlawful"

deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York

Subclass Members seek monetary damages and the entry of preliminary and permanent

injunctive relief against Defendant, enjoining it from inaccurately describing, labeling,

marketing, and promoting the Product.

60.     There is no adequate remedy at law.

61.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its

Product to consumers.

62.     Defendant's improper consumer-oriented conduct—including labeling and

advertising the Product as being "100% safe" and "completely safe" and having the ability to

"eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and

20

molds, as well as omitting adequate safety warnings—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Product and to use the Product when they otherwise would not have. Defendant made its untrue and/or misleading statements, representations, and omissions willfully, wantonly, and with reckless disregard for the truth.

63.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for a Product that cannot—contrary to Defendant's representations—"eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds, and is not "100% safe" and "completely safe." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

64.    The Product's packaging and labeling, and Defendant's omissions regarding the dangers of the Product, induced Plaintiff and the New York Subclass Members to buy Defendant's Product and to pay a premium price for it.

65.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

66.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

67.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

68.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

69.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

70.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Product inasmuch as they misrepresent that the Product will "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds and that the Product is "100% safe" and "completely safe."

71.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, advertising, and omissions and paid a premium for the Product— which contrary to Defendant's representations— does not have the ability to

"eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds, and which is not "100% safe" and "completely safe," and which does not have adequate safety warnings.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

72.    Defendant's advertising, packaging, product labeling, and omissions induced Plaintiff and the New York Subclass Members to buy Defendant's Product.

73.    Defendant made its untrue and/or misleading statements, representations, and omissions willfully, wantonly, and with reckless disregard for the truth.

74.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

75.    Defendant made the material misrepresentations described in this Complaint in its advertising, and on the Product's packaging and labeling.

76.    Defendant's material misrepresentations and omissions were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations and omissions.

77.    As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
#### (On Behalf of Plaintiff and All Class Members)

78.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

79.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product was "100% safe" and "completely safe" and will "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds.

80.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

81.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

82.     Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Product.

83.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

84.     Defendant breached the express warranty because, as set forth herein, the Product is not "100% safe" and "completely safe" and cannot "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds.

85.     Defendant thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

25

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

26

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313;

xx.    Wyo. Stat. § 34.1-2-313.

86.    As a direct and proximate result of Defendant's breach of express warranty,

Plaintiff and Class Members were damaged in the amount of the price they paid for the Product,

in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of Plaintiff and All Class Members)**

87.    Plaintiff repeats and realleges each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

88.    Defendant, directly, or through their agents and employees, made false

representations, concealments, and non-disclosures to Plaintiff and Class Members about the

Product.

89.    In making these false, misleading, and deceptive representations and omissions,

Defendant knew and intended that consumers would pay a premium for all products labeled as

"eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds,

and which is not "100% safe" and "completely safe," for which they are marketed and sold,

furthering Defendant's private interest of increasing sales for its Product and decreasing sales of products that are truthfully marketed and sold by Defendant's competitors.

90.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive statements and representations, Defendant injured Plaintiff and Class Members in that they paid a premium price for the Product which was not as represented.

91.    In making the representations of fact to Plaintiff and Class Members described herein, Defendant has failed to fulfill their duties to disclose material facts about the Product.  The failure to disclose the true nature of the Product's abilities was caused by Defendant's negligence and carelessness.

92.    Defendant, in making these misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the misrepresentations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiff and Class Members.

93.    The Plaintiff and Class Members relied on these false representations and non-disclosures by Defendant when purchasing the Product, upon which reliance was justified and reasonably foreseeable.

94.    As a result of Defendant's wrongful conduct, Plaintiff and Class Members have suffered and continue to suffer economic losses and other general and specific damages, including amounts paid for the Product and any interest that would have been accrued on these monies, all in the amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and All Class Members)**

95.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

96.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

97.     The Product is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

98.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

99.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

100.     Defendant represented in writing that the Product was "100% safe" and "completely safe" and will "eliminate any harmful bacteria and virus" and kills 99.99% of viruses, bacteria, germs and molds.

101.     These statements were made in connection with the sale of the Product and relate to the nature of the Product and affirm and promise that the Product is as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

29

102.     As alleged herein, Defendant breached the written warranty by selling consumers a Product that is not "100% safe" and "completely safe" and cannot "eliminate any harmful bacteria and virus" and kills 99.9% of viruses, bacteria, germs and molds.

103.     The Product does not conform to Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

104.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

105.     Plaintiff, on behalf of herself and consumers nationwide, brings a common law claim for unjust enrichment.

106.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Product while misrepresenting and omitting material facts.

107.     Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Product at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

108.     Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Product, which was not as Defendant represented

them to be.

109.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

110.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c) Awarding monetary damages, including treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated:  November 4, 2020

THE SULTZER LAW GROUP P.C.

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.

Joseph Lipari, Esq.

Jeremy Francis, Esq.

85 Civic Center Plaza, Suite 200

Poughkeepsie, NY 12601

Tel: (845) 483-7100

Fax: (888) 749-7747

sultzerj@thesultzerlawgroup.com

REESE LLP

Michael R. Reese

100 West 93rd Street, 16th Floor

New York, New York 10025

Tel:  (212) 643-0500

Fax:  (212) 253-4272

Email:  *mreese@reesellp.com*

*Counsel for Plaintiff and the Class*